UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PHILLIP A. PINKUS,

                       Plaintiff,

v.

THE PAYDAY LOAN STORE OF WISCONSIN, INC.,

                       Defendant.

Case No. 13-CV-718-JPS

ORDER

1.    BACKGROUND

Plaintiff Phillip A. Pinkus ("Pinkus") claims that his former employer, The Payday Loan Store of Wisconsin, Inc. ("Payday"), constructively discharged him in retaliation for opposing alleged racial and age-based discrimination against fellow employees of Payday's store located in West Allis, Wisconsin, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq* ("ADEA"). (Docket #12); (Docket #17 at 1).

Before the Court is Payday's motion to dismiss Pinkus' amended complaint for failure to state a claim upon which relief can be granted. (Docket #14); (Docket #15); Federal Rule of Civil Procedure 12(b)(6).[1]

2.    PINKUS' AMENDED COMPLAINT

Below, the Court recites Pinkus' pertinent factual allegations as though they are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

---

[1] Payday asks this Court to allow one of its attorneys of record, Andrew T. Frost, to withdraw his appearance in this matter. (Docket #24). For good cause shown, that request will be granted *nunc pro tunc.*

In 2009, Pinkus began working for Payday as a Store Manager at the company's location in West Allis, Wisconsin. (Docket #12, ¶ 6).

In March 2010, Pinkus and his supervisor, Mario Millianti ("Millianti"), interviewed a candidate who they agreed would be perfect for the job. (*Id.* at ¶ 9). However, upon learning the candidate's true age (sixty-one) from her driver's license, Millianti cast her out of consideration. (*Id.* at ¶ 10). Approximately one week later, Pinkus hired that sixty-one year old candidate over Millianti's objections. (*Id.* at ¶ 11).

Two months later, in May 2010, Pinkus discovered that Millianti was paying a Caucasian manager $12.00 per hour while an African-American manager and a Hispanic manager each received only $9.50 per hour. (*Id.* at ¶ 13). Pinkus told Millianti the pay discrepancy was "not fair." (*Id.*).

Thereafter, Millianti made it difficult for Pinkus to hire more people "even though the West Allis store was severely understaffed in the first half of 2010." (*Id.* at ¶ 16). In addition, Millianti would not allow any of Pinkus' hourly staff to work overtime, instead requiring Pinkus (a salaried employee) to work necessary overtime. (*Id.* at ¶ 17). Moreover, Millianti refused to give Pinkus a previously agreed-upon raise. (*Id.* at ¶ 18).

On or about June 14, 2010, Pinkus sent a letter to Payday's Human Resources department "complaining about Millianti's discrimination and retaliation." (*Id.* at ¶ 19). Three days later, Pinkus met with Millianti and a Human Resources Generalist from Payday to discuss Pinkus' complaints. (*Id.* at ¶ 20). The generalist and Millianti "accused Plaintiff of wrongdoing" and, "on or about June 23, 2010," Payday "issued baseless discipline" to Pinkus.

(*Id.* at ¶¶ 21 and 22).[2] On June 23, 2010, Pinkus quit because "he could no longer work under the intolerable conditions" at Payday. *See* (*Id.* at ¶ 23).[3]

Subsequent to Pinkus' departure, Payday hired a Caucasian person to replace him and provided that individual: (i) "more staff"; (ii) authority to grant overtime to subordinates; and (iii) "a pay raise." (*Id.* at ¶¶ 24-25).

On July 29, 2010, Plaintiff filed a retaliation charge with the Wisconsin Equal Rights Division, cross-filing the same with the U.S. Equal Employment Opportunity Commission. (*Id.* at ¶ 26). Less than two months later, the EEOC "found cause to believe" that Pinkus was, *inter alia*, terminated in retaliation for opposing discrimination in the workplace. (*Id.* at ¶ 27). Then, on March 27, 2013, the EEOC issued a Notice of Right to Sue on Pinkus' charge. (*Id.* at ¶ 28).

3. APPLICABLE LAW

    3.1    Motion to Dismiss

In general, under the federal notice pleading protocol, the plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In other words, the complaint must

---

[2] Pinkus' amended complaint provides *no details whatsoever* about the nature of the accusations or the discipline. (*Id.* at ¶¶ 21 and 22).

[3] As noted above, Pinkus claims Payday "constructively discharged" him. (*Id.*).

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### 3.2 Retaliation Claims

To state a retaliation claim under Title VII or the ADEA, a plaintiff must plead factual content that allows the court to draw reasonable inferences that: (i) the plaintiff engaged in statutorily protected activity; (ii) he suffered a materially adverse action by his employer; and (iii) there was a causal link between the two. *Porter v. City of Chicago*, 700 F.3d 944, 957 (7th Cir. 2012) (Title VII); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011) (ADEA).

### 4. ANALYSIS

Payday's motion to dismiss argues principally that Pinkus has failed to plead factual content from which the Court could reasonably infer that Pinkus suffered a materially adverse action by his employer. (Docket #15).

In opposition to Payday's motion to dismiss, Pinkus' counsel filed an exceptionally meager brief totaling only *three* double-spaced pages (inclusive of the case caption and signature block). (Docket #17). That document argues that Pinkus' factual allegations (recited *supra* in Section Two) permit an inference of constructive discharge. (*Id.*).

If an employee is constructively discharged by his employer, the employee is considered to have suffered a materially adverse action. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). In general, constructive discharge occurred if a plaintiff "was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id.* Under Seventh Circuit precedent, two different forms of constructive discharge are recognized. *Id.*

> In the first form, an employee resigns due to alleged discriminatory harassment. Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit.

*Id.* (citations omitted).

As to this first form, the Seventh Circuit has found constructive discharge where a threat was made to the plaintiff's personal safety (such as "repeated use of noose and implied threats of physical violence" or "where supervisor brandished a firearm and held it to the plaintiff's head"). *Id.* (citations omitted). Pinkus alleges nothing of this nature. *See* Section Two, *supra*. Accordingly, the Court turns to the second form of constructive discharge.

The second form of constructive discharge occurs "'[w]hen an employer acts in a manner so as to have communicated to a reasonable

employee that she will be terminated….'" *Chapin*, 621 F.3d at 679 (quoting *EEOC v. University of Chicago Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002)). Notably, a prospect of discharge lurking in the background is not sufficient. *Chapin*, 621 F.3d at 679. By contrast, an employer was found to have communicated to its employee that she will be terminated where the employee: (i) received suddenly negative performance evaluations; (ii) was told that a minor mistake was "the last straw"; and (iii) subsequently arrived at work to find her belongings packed and her office being used as storage. *Univ. of Chi. Hosps.*, 276 F.3d at 332 and 329-30.

Here, even construing all of Pinkus' allegations in his favor, no reasonable employee standing in Pinkus' shoes would believe that had he not resigned, he would have been fired immediately. Rather, the workplace conditions Pinkus complains of—limits on hiring subordinates; having to work overtime; not receiving an agreed-upon raise; and receiving unspecified, baseless discipline after being accused of unspecified wrongdoing—simply do not permit a reasonable inference that Pinkus' termination was "an imminent and inevitable event." *Chapin*, 621 F.3d at 680.

With the benefit of the foregoing analysis, the Court is obliged to find that Pinkus fails to state a claim of retaliation under either Title VII or the ADEA.[4]

Accordingly,

---

[4] Payday argues that Pinkus' amended complaint (Docket #12) should be dismissed with prejudice because Payday's first motion to dismiss (Docket #8) Pinkus' initial complaint (Docket #1) raised the same general arguments regarding Pinkus' retaliation allegations, *compare* (Docket #9) and (Docket #15). Pinkus' brief opposing Payday's second motion to dismiss fails to respond to Payday's arguments regarding dismissal with prejudice. (Docket #17).

Against that backdrop, Pinkus' complaint will be dismissed with prejudice.

IT IS ORDERED that Defendant's motion for leave to withdraw the appearance of attorney Andrew T. Frost as counsel of record in this matter (Docket #24) be and the same is hereby GRANTED *nunc pro tunc*;

IT IS FURTHER ORDERED that Defendant's second motion to dismiss (Docket #14) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of May, 2014.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge